MAXWELL, J.,
 

 for the Court.
 

 ¶ 1. David Lynch was convicted in Clarke County Circuit Court of possession of cellular phones while confined in a correctional facility, in violation of Mississippi Code Annotated section 47-5-193 (Supp. 2009). He was sentenced as a habitual offender to fifteen years’ imprisonment in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Lynch claims the circuit court erred in denying his motion for a mistrial. Lynch moved for a mistrial after the circuit court allowed the State to question Lynch about an out-of-court representation made by his attorney. Finding no reversible error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On December 23, 2007, Deputy Elton Davis received a report that something was burning in jail cell M-l, where Lynch was housed. Smoking is prohibited in the correctional facility, so Deputy Davis called for a search of the jail cell for contraband. He was assisted by Deputies Berry White and Jerry Ivey.
 

 ¶ 3. The deputies had each of the inmates exit the cell.
 
 [1]
 
 Deputy Davis remained in the hall, while Deputies White and Ivey entered, cleared, and searched the cell for contraband. According to Deputy Davis, Lynch was the first to exit the jail cell. Lynch was dressed in a T-shirt and orange pants. Deputy Davis patted Lynch’s torso area and ordered him to pull down his pants. When Lynch complied, Deputy Davis noticed Lynch was wearing four pairs of boxer shorts, as well as, a pair of thermal underwear. After having him remove his outer garments, Deputy Davis immediately saw a bulge in Lynch’s thermal underwear. Davis notified Deputy White. He then retrieved two cell phones from the pouch located in the crotch area of Lynch’s thermal underwear. Deputy White testified that he also observed the bulge in Lynch’s underwear and witnessed Deputy Davis remove the cellular phones. Mississippi Code Annotated section 47-5-193 prohibits possession of cellular phones in a correctional facility.
 

 ¶ 4. Lynch testified in his own defense and admitted the phones were found in his possession but denied ownership or knowing possession of the phones. Lynch’s defense centered around his claim that he was showering at the time the deputies began their search of the jail cell. He contended that after exiting the shower, he borrowed clothes from another inmate. Lynch testified that when he began putting on the borrowed pants, the thermal underwear was already inside of the pants. Though he denied wearing four pairs of boxer shorts, he admitted he knew the thermal underwear contained some form of contraband, but he decided to take his chances rather than notify the deputies.
 
 *1045
 
 According to Lynch, he was still wet and had soap on him when the deputies entered his cell.
 

 ¶ 5. Deputy Davis testified that Lynch was not wet or damp during the search, and Deputy White explained to the jury that Lynch was not showering when the search began. Deputy Ivey was called as a rebuttal witness for the State. He also contradicted Lynch’s testimony about being in the shower when the deputies arrived to conduct the search.
 

 ¶ 6. During Lynch’s cross-examination, he accused Deputies Davis and White of fabricating their testimony about the cell phones on the day of trial. After Lynch made these claims, the prosecutor asked Lynch if he had previously read the two deputies’ written statements about the seizure. Lynch denied having read the statements, but said he had heard the statements. The State then questioned Lynch about his attorney’s pretrial representation to the circuit judge and assistant district attorney that Lynch had “read his discovery.” Lynch’s counsel objected to this line of questioning and moved for a mistrial. The circuit court overruled his objection and denied his motion for a mistrial.
 

 ¶ 7. The jury found Lynch guilty of possession of contraband inside a correctional facility. The circuit judge denied Lynch’s post-trial motions for a new trial and for a judgment notwithstanding the verdict.
 

 STANDARD OF REVIEW
 

 ¶ 8. Trial judges enjoy a great deal of discretion in addressing the relevancy and admissibility of evidence.
 
 Robinson v. State,
 
 940 So.2d 285, 238(117) (Miss.2006). “Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected.”
 
 Johnson v. State,
 
 666 So.2d 499, 503 (Miss.1995) (citing
 
 Green v. State,
 
 614 So.2d 926, 935 (Miss.1992)); M.R.E. 103(a).
 

 ¶ 9. A mistrial may only be granted by the trial court “when the harm done would render the defendant without hope of receiving a fair trial.”
 
 Lepine v. State,
 
 10 So.3d 927, 941(¶ 39) (Miss.Ct.App.2009) (quoting
 
 Reed v. State,
 
 764 So.2d 511, 513(¶ 7) (Miss.Ct.App.2000)). The trial judge is in the best position to assess the effect of the incident, and we will not reverse unless the trial judge abused his discretion in denying the motion for a mistrial.
 
 Ladner v. State,
 
 584 So.2d 743, 753 (Miss.1991).
 

 DISCUSSION
 

 ¶ 10. Before trial, Lynch’s attorney informed the circuit court and assistant district attorney that Lynch had “read his discovery and he’s reviewed the videos that we have been furnished by the State.” After Lynch accused Deputies Davis and White of fabricating their trial testimony, the following exchange took place during Lynch’s cross-examination by the State:
 

 [Prosecutor] You got to read [the statements], didn’t you?
 

 [Lynch] I heard them.
 

 [Prosecutor] I know. But didn’t you read those statements?
 

 [Lynch] I heard them.
 

 [Prosecutor] Listen to my question. You read these statements?
 

 [Lynch] No, I haven’t read these statements.
 

 [Prosecutor] Now, earlier today, not with the jury here, but Mr. Jordan had made a comment with you present that you had read over all of the discovery, is that not true?
 

 [Lynch] The discovery — I didn’t know I was even coming to trial here today for the cell phones, sir.
 

 [Defense counsel] We move for a mistrial, Your Honor. The jury needs to be
 
 *1046
 
 released for a moment, Judge. I want to argue this, Your Honor.
 

 [[Image here]]
 

 [Defense counsel] Your Honor, I would ask Rhonda, if she would, to read back the last statement about what Mr. Jordan said outside the presence of the jury.
 

 [Prosecutor] What I said was is, outside the presence of the jury, Mr. Jordan said that you had read over your discovery. That’s all I said.
 

 [Defense counsel] And I don’t think I’ve ever said that.
 

 [Prosecutor] That’s exactly what you said back there in the Judge’s chambers. Didn’t he, Judge?
 

 THE COURT Yes, sir.
 

 [Defense counsel] I said he had read his discovery. But you don’t make that comment when the jury is sitting in the box. He has read his discovery.
 

 THE COURT This man denied exactly that under oath on the witness stand, and that is certainly a matter of fact that would be right for cross-examination. The whole issue is his credibility here.
 

 [Defense counsel] I agree with you, Your Honor.
 

 THE COURT And there was certainly a representation by you that he had, in fact, read over his discovery.
 

 [Defense counsel] To my knowledge he had because he’s viewed all the videos.
 

 THE COURT And what we have on the witness stand here is a sworn statement that he had not. That is a conflict that is an appropriate matter for cross-examination.
 

 [Defense counsel] Yes, sir. He has reviewed all the videos to my knowledge. I know [Defense co-counsel] has read them to him. Is that correct, [Defense co-counsel]?
 

 [Defense co-counsel] That’s correct.
 

 THE COURT So, I mean, if — it is an unusual matter for cross-examination; however, under the facts here presented, I don’t think it is an inappropriate matter for cross-examination and your motion for a mistrial under those circumstances and under these circumstances here present is overruled.
 

 ¶ 11. Lynch’s appeal is based primarily on the supreme court’s decision in
 
 Walker v. State,
 
 729 So.2d 197 (Miss.1998). He contends that based on
 
 Walker,
 
 we are required to reverse his conviction. However, we decline to read
 
 Walker
 
 so broadly-
 

 ¶ 12. In
 
 Walker,
 
 the circuit court allowed the defendant, Calvin Walker, to be cross-examined about comments made by his co-defendant’s lawyer during opening statements. The attorney’s comments directly implicated Walker in a crack cocaine transaction and were used by the State as substantive evidence of Walker’s guilt on the cocaine-distribution charges.
 
 Id.
 
 at 201(¶ 14). In fact, a substantial portion of Walker’s cross-examination centered on the “tacit admission of guilt” made by his co-defendant’s attorney. As the supreme court put it:
 

 The State seized on the statements of [the co-defendant’s] counsel, and hammered Walker, testifying on his own behalf, with this apparent tacit admission of guilt by his co-defendant, and despite vociferous objection from Walker’s attorney, the trial court allowed the prosecutor to treat [the co-defendant’s] attorney’s opening statement as if it were direct testimony by [the co-defendant] against Walker[.]
 

 Id.
 
 at 200-01(¶ 12).
 

 ¶ 13. Here, only a small portion of Lynch’s cross-examination focused on his
 
 *1047
 
 attorney’s statements. More importantly though, unlike the attorney’s statement in
 
 Walker,
 
 Lynch’s attorney’s representation was used only for impeachment purpose on a collateral and quite trivial matter— whether Lynch had
 
 heard
 
 or
 
 read
 
 his discovery. Lynch’s attorney’s statements did not touch on his client’s guilt, much less rise to the level of a “tacit admission of guilt” on the underlying phone-possession charge.
 

 ¶ 14. In addressing the circuit court’s decision to permit the State to conduct the complained of examination, we point out that while trial judges enjoy a great deal of discretion in assessing the admissibility of evidence, such discretion must be exercised within the confínes of the rules of evidence.
 
 Bailey v. State,
 
 956 So.2d 1016, 1025(¶ 26) (Miss.Ct.App.2007) (citing
 
 Austin v. State,
 
 784 So.2d 186, 193(¶ 23) (Miss. 2001)).
 

 ¶ 15. Unsworn prior inconsistent statements of a witness may be used to impeach the witness’s credibility. M.R.E. 613(b). However, here we are not faced with a prior statement from a testifying witness. Also, there is nothing in the record to establish that Lynch agreed with his counsel’s representation that he had read the deputies’ statements. Absent such an acknowledgment, we cannot conclude that Lynch adopted his attorney’s statements as his own. Thus, Lynch’s attorney’s representations were not prior inconsistent statements under 613(b) and should not have been used for impeachment purposes under these circumstances.
 

 ¶ 16. While we find it was error for the circuit court to allow the State to use Lynch’s attorney’s statements for impeachment purposes, errors in the admission or exclusion of evidence are not grounds for reversal unless the errors adversely affect a substantial right of a party.
 
 Bailey,
 
 956 So.2d at 1025-26(¶ 26) (eit-ing
 
 Lynch v. State,
 
 877 So.2d 1254, 1281(¶ 86) (Miss.2004)).
 

 ¶ 17. The supreme court has explained our standard regarding harmless error as follows:
 

 To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground[s] for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it.
 

 Hicks v. State,
 
 6 So.3d 1099, 1103(¶ 17) (Miss.Ct.App.2008) (citing
 
 Gray v. State,
 
 799 So.2d 53, 61(¶30) (Miss.2001)).
 

 ¶ 18. Due to the overwhelming evidence of Lynch’s guilt, we find the decision to allow the State to impeach Lynch with his attorney’s statement was harmless error. Deputies Davis and White testified that upon searching Lynch they saw the bulge in the crotch area of his long underwear. Deputy Davis testified that he retrieved the cellular phones from Lynch’s person, and Deputy White corroborated the seizure. Also, the jury was free to reasonably infer that Lynch wore four pairs of boxer shorts on top of the thermal underwear in an effort to conceal the phones during the search. Furthermore, Lynch’s defense that he had been showering when the deputies began the search and hurriedly put on another inmate’s clothes was
 
 *1048
 
 largely contradicted by the testimony of Deputies Davis, White, and Ivey.
 

 ¶ 19. The underlying offense turns on possession of the cellular phones, not ownership. And we find, there was ample evidence for the jury to find that Lynch knowingly possessed the contraband phones. Our supreme court instructs that “[ejrroneously admitted evidence is harmless when ‘the same result would have been reached had error not existed.’ ”
 
 Caldwell v. State,
 
 6 So.3d 1076, 1079(¶ 9) (Miss.2009) (citing
 
 Tate v. State,
 
 912 So.2d 919, 926(¶ 18) (Miss.2005)). As our United States Supreme Court has stated, a criminal defendant is “entitled to a fair trial but not a perfect one, for there are no perfect trials.”
 
 Brown v. United States,
 
 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (citation and internal quotations omitted). Considering the evidence presented against Lynch, we conclude that any error caused by the State’s reference to Lynch’s attorney’s comments was at most harmless and clearly did not affect the final outcome of his case.
 

 ¶ 20. While the circuit court erred in permitting the State to pursue this line of questioning, we do not find its decision to deny Lynch’s motion for a mistrial rendered Lynch without hope of receiving a fair trial. Accordingly, we find the circuit court did not err in denying Lynch’s motion for a mistrial.
 

 ¶ 21. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF CONTRABAND IN JAIL AND SENTENCE AS A HABITUAL OFFENDER OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PROBATION, PAROLE, EARNED RELEASE, EARNED TIME, GOOD TIME, TRUSTEE STATUS OR ANY TYPE OF REDUCTION OF SENTENCE AND TO PAY A FINE OF $500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . The exact number of inmates in jail cell M-S1 was disputed at trial; however, the deputies testified the jail cell could house up to eight inmates.